(38 South. 865.)

No. 15,514.

PENN v. PREVOST.*

(June 5, 1905.)

PETITORY ACTION—ADVERSE POSSESSION.

The plaintiff in a petitory action cannot recover land which, pursuant to an agreement to which he was a party, was sold more than 30 years ago at sheriff's sale, and subsequently mortgaged to him, and of which the defendant, who acquired through mesne conveyances from the original purchaser, by himself and through his authors, has been in actual, open, notorious, and uninterrupted possession, under titles translative of property, for more than 10 years.

(Syllabus by the Court.)

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Action by Henry Penn, Jr., against Demas Prevost. Judgment for defendant, and plaintiff appeals. Affirmed.

J. Sully Martel and Beattie & Beattie, for appellant. D. Caffery & Son, Philip H. Mentz, and Charles Frank Borah, for appellees.

*Rehearing denied June 27, 1905.

## Statement.

MONROE, J. This is a petitory action for the recovery of an undivided half interest in a tract of land lying west of Bayou Teche, in the parish of St. Mary, which the plaintiff alleges was acquired by his sister Clara (now Mrs. Rodgers) and himself, as sole surviving heirs of their father, and of which he alleges that the defendant, Demas Prevost, is in possession without title. The defendant sets up a title said to have been acquired by purchase from Mrs. Alix Hebert, W. P. Kemper, J. P. Kemper, and G. A. Roussel, and calls his vendors in warranty (Mrs. Hebert, now deceased, being represented by the administrator of her succession), and they, in turn, call in their vendors; the defendant and warrantors also pleading prescription and estoppel. The facts disclosed by the record are as follows:

In 1845 Henry Penn, Sr., plaintiff's father, acquired, as community property, by purchase from G. L. Fuselier, "the plantation, improved with sugar house, containing 400 superficial arpents and measuring five arpents on the rear line of the land originally granted to Frederick Pellerin by 40 arpents in depth, including sufficient adjoining land to make up said 400 arpents, together with all the improvements, rights and appurtenances thereunto belonging"; and in 1850 he acquired, under like conditions, from R. M. Sawyer, school superintendent, a tract containing 80 acres, described as the N. E. ⅛ of quarter section 16 in T. 14 S., R. 8 E.; being the tract here in dispute, which was at that time supposed to adjoin the tract acquired from Fuselier. In 1854 Penn mortgaged the Fuselier tract to P. Hebert, tutor, to secure a debt of $1,944.80. In 1859 Henry Penn, Sr., died, leaving a widow and four children, and, his succession having been opened, proceedings were taken which resulted in the convocation of a family meeting which advised that all the property of the community be adjudicated to the widow at the valuation fixed by the inventory. This inventory, it may be remarked, appears to have been lost. The proceedings of the family meeting were homologated by the clerk of the court, who went farther, and made the following order, to wit:

"It is therefore ordered that all of the common property of which an estimation was taken on said 2nd day of April, 1859, be and they [sic] are hereby adjudicated to Eugenie Deyris, widow of the late Henry Penn."

In December, 1865, Henry Penn, Jr., plaintiff herein, instituted suit in the district court, alleging the death of his father and the settlement of his succession, and further alleging that "on the 19th of April, 1859, under regular proceedings had, under orders and decrees of said court, his natural tutrix had caused the community property, or the property held in common between her and her minor children, to be adjudicated to her"; that she had filed an account showing that she owed each of her minor children $7,586.03⅛, exclusive of the price of two slaves, the separate property of the father; that his brother, William, had died intestate, and that his estate had been inherited by their mother and by petitioner and his two sisters, Clara and Alice, in the proportions of one-fourth to each; that he had without avail demanded of his mother a settlement of his rights; and praying that she be ordered to file an account, or that, on her failure to do so, she be condemned to pay him various amounts, aggregating $10,367.- 62⅛, with interest. Upon this petition in May, 1867, there was judgment for plaintiff against his mother for $10,067.62⅛, with interest, and a like judgment was rendered in favor of the defendant's daughter, Clara, who had been emancipated by judgment, and had married F. H. Rodgers. In October, 1869, Mrs. Penn executed in authentic form a dation en paiement, which was duly

accepted, and which recites that the appearer desires to convey to her children, Henry and Clara, in part satisfaction of the judgments obtained by them, "all of the property she has in her name," and, with their consent, does convey to them—

"That certain tract of land, or sugar plantation, * * * together with all the buildings and improvements thereon situated. as also the right of wood from the land of Gabriel Fuselier called Crocodile Island, and composed of the balance of the original tract as acquired by Henry Penn, deceased, from Gabriel L. Fuselier, containing 385 arpents, more or less, and another tract, of 80 acres, adjoining the above tract, all supposed to contain 479 arpents [and some other property is described, with which we have no present concern, the whole being accepted by the donees at a valuation of $11,000] less any amount that said property may be bound for on account of debts and liens existing against, and affecting, the same and that may, hereafter, subject said property to the payment thereof, and particularly the one undivided half of the property so conveyed to said Henry Penn is subject now to certain litigious proceedings, instituted by P. Pecot and Cerf; said vendor, it being understood, hereby merely devests herself, and invests her said children, of the title, possession and ownership of said property, she, the said Mrs. Eugenie Penn, to have no further care or charge of said property, whatever, her children, hereby being in possession thereof, are to take and avail themselves of all legal steps to secure and make good the title to said property against all claims of any person or persons whatsoever; that, so far as the title of one undivided half of said property so conveyed to her said daughter Clara Penn the same is perfect in itself, but the portion conveyed to the said Henry Penn is subject as aforesaid to litigious proceedings in which said Henry Penn is individually interested, and this transfer and proceeding does not imply, nor can it affect or encumber or jeopardize the rights of said Mrs. Clara Rodgers, but the rights of each party hereto are held separate and distinct," etc.

It would appear from this description that Henry Penn, or those who succeeded him, had alienated some 15 arpents of the tract acquired from Fuselier and included in Crocodile Island, but how or when this was done is not shown. The dation en paiement, for some unexplained reason, was not satisfactory to the donees, and on November 29, 1869, William P. Kemper and Henry Penn, Jr., entered into a written contract (to which, however, Mrs. Eugenie Penn was not a party) in which it is declared and agreed, in substance, as follows:

"That the latter sells to the former his judgment claim against his mother, his former tutrix, of the interest heretofore conveyed to him * * * in and to the plantation fully described in the act of sale, or dation en paiement, from said tutrix * * * now, as it has been ascertained that it is better and safer that a title should be made to the property under writs of fi. fa. regularly issued in pursuance of, or in conformity with, the judgments rendered in suits of Henry Penn * * * and Clara Penn * * * vs. Eugenie Deyris, Tutrix, * * * it is understood that William P. Kemper will bid at the sheriff's sale, for Henry Penn's claim, $10,500 and Mrs. Rodgers, or her husband, * * * the same amount, for her interest, and should there be any other bidders the said Clara Penn and William P. Kemper will bid as much more as will secure the adjudication to them, jointly, at the price of $21,000, whatever may be the nominal sum at which the property may be adjudicated for cash, it being agreed and understood that William P. Kemper, whatever be the price of adjudication and the terms of payment, is not to account for more than $10,500, to be paid as follows, to wit:  $1,000.00 on the 1st of January, 1870, the balance, at one, two and three, years."

Here follow certain specifications and stipulations looking to the payment of Pecot and Cerf, creditors of Henry Penn, Jr., to the issuance of the writs of execution, the payment of the costs, etc.

Pursuant to this agreement, writs of fi. fa. were issued under the judgments obtained by Henry Penn, Jr., and Mrs. Rodgers, and the sheriff issued notice of seizure in which the Fuselier tract (or the balance of the Fuselier tract) is described as in the dation en paiement; and, as in that act, we find the further description "and another tract of eighty acres, adjoining the above described tract; all supposed to contain 479 arpents."

In the sheriff's return, the concluding portion of the descriptive language, varying from that used in the notice of seizure, reads:

"* * * Bought by said deceased of G. L. Fuselier, containing 385 acres adjoining the above described tract, all supposed to contain about 479 arpents."

In the appraisement which preceded the sale, we find the description:

"* * * Bought by said deceased of Gabriel L. Fuselier, containing 385 acres, adjoining the above described tract, another tract of 80 acres, all supposed to contain 479 arpents."

Pursuing the inquiry, we find in the record, as having been admitted in evidence over the objection of the defendant, a copy from the books of the conveyance office of the sheriff's deed as there registered, in which the description conforms to the sheriff's return. Upon the other hand, the defendants have offered a copy of a copy of the original deed, found in the record of the suit of Henry Penn, Jr., v. Eugenie Deyris, in which the description conforms to that contained in the notice of seizure and the appraisement. William P. Kemper and Mrs. Rodgers bought the property that the sheriff offered for $13,350, and on February 5, 1870, Kemper and Henry Penn, Jr., appeared before the parish recorder, as ex officio notary public, and executed an act in which their agreement of November 29, 1869, is recited as a preamble, and in which it is further recited that Kemper has purchased at sheriff's sale, pursuant to said agreement, an undivided half interest in (here follows a description of the Fuselier and the 80-acre tracts, as contained in the dation en paiement, concluding with the words "* * * bought by said Henry Penn, deceased, from Gabriel L. Fuselier, containing 385 arpents more or less, and another tract, of 80 acres, adjoining the above described tract of land, supposed to contain 479 arpents"). The act further recites that, although it appears from the procès-verbal of the sheriff that the purchaser paid the price in cash, in point of fact the same is paid and payable in accordance with said agreement, and, in compliance therewith, that Kemper has paid to said Henry Penn, Jr., $1,000, in cash, on January 1st preceding, and then and there delivers his notes for the balance (as per said agreement) of $9,500, for which he grants a mortgage and recognizes a vendor's privilege on the property.

In the meanwhile some activity had been developed in another direction. In April, 1869, J. D. Seyburn, as the holder and owner of the mortgage which had been imposed on the Fuselier tract by Henry Penn, Sr., in favor of P. Hebert, tutor, instituted suit against Mrs. Penn, Henry Penn, Jr., and Mrs. Rodgers, alleging that they had accepted the succession of Henry Penn, Sr., and praying judgment against them, with recognition of the mortgage. And he eventually obtained judgment, which was partially affirmed by this court (Seyburn v. Eugenie Deyris et al., 25 La. Ann. 483), and for the satisfaction of which the Fuselier tract was sold. Whereupon Kemper, being evicted therefrom, refused to pay the notes which he had given as in part payment of the price of that property and of the property here in dispute, and A. C. Dumartrait, who held the notes, brought suit on them, in his own behalf and in behalf of Henry Penn, Jr., and his creditors, and obtained judgment, in the district court, which was reversed by this court, in an opinion from which we make the following excerpt, to wit:

"The defense is failure of consideration, caused by the eviction of the principal part of the tract of land for the purchase price of which these notes were given. * * * Failure of consideration is clearly shown. There is no demand in reconvention in the pleadings, although urged in the brief, for the cash part of the price of the land paid by the defendant to Penn. Besides, Penn has not been cited. If plaintiff has authority from Penn to sue on the notes, that does not give him authority to represent him in the demand to recover the cash part of the price of the land which he paid Penn at the time of the sale." Dumartrait v. Kemper, 28 La. Ann. 620.

It may be here remarked that the petition filed by Dumartrait describes the property in question as it is described in the mortgage executed by Kemper, and it alleges that

Kemper became the owner and possessor of it, including the "tract of 80 acres adjoining the above described [Fuselier] tract"; and it neither appears that he was ever thereafter dispossessed of said 80-acre tract, or that he ever recovered or attempted to recover the $1,000 in cash that he had given in payment for the said tract and for the Fuselier tract, from which latter he was evicted. In 1865 the plaintiff moved out of the neighborhood, and he remained away until 1885, when his wife acquired a tract adjoining the tract in dispute, upon which he settled, and built a fence which separated it from the tract in dispute, but which he does not make it clear was intended to inclose the latter; and, whilst it does appear that for several years he pastured cattle on the tract in dispute, we conclude from the testimony that it was then, and until 1891, used by any one who chose to use it for that purpose. Shortly before that time, however, W. P. Kemper died, and in 1891 his son took possession of and rented the tract in question to Ernest Prevost, who sublet it to Polite Broussard, who built a butcher shop and pastured his cattle on it. This possession continued until 1894, when the widow of W. P. Kemper, having purchased the interests of her children, sold to Ernest Prevost the undivided half interest in the tract which had been acquired by her husband; and in 1895 Ernest Prevost sold said interest to Mrs. Alix Hebert, who in 1899 sold it to the defendant. It will thus be seen that the defendant and his immediate authors had been in actual, open, continuous, and undisturbed possession, under titles translative of property, so far as the undivided half interest here claimed is concerned, for more than 10 years before this suit was brought, and that the plaintiff has in the meanwhile been living on the adjoining property. It may be remarked in conclusion of this statement that the impression

that this 80-acre tract and the Fuselier tract adjoined each other arose from the fact that there had been two surveys, known as the Johnson and Field surveys, respectively, and that according to the former the two tracts mentioned adjoin, or were believed to adjoin, each other, whereas by the latter, which has been accepted as correct, and which changes the location of the township line as established by the Johnson survey, the two tracts are separated by a long, narrow strip of land, spoken of in the testimony as the Bloch tract. The identity of the tract here in question with that sold by the sheriff to Kemper, and by him mortgaged to the plaintiff, is therefore sufficiently established by the fact that it had originally been supposed to adjoin the Fuselier tract, and by the additional fact that neither Henry Penn, Sr., nor the plaintiff appear ever to have owned any other land answering the description of the 80-acre tract which was included in the sale and mortgage mentioned above. Being asked, whilst on the stand as a witness, what land was included in the agreement and mortgage with and from Kemper, plaintiff answered, "I don't know, myself," and the cross-examination proceeds as follows:

"Q. How many 80-acre tracts did you have? A. I had another 80 acres, but it did not belong to that piece at all. Q. Where was it? A. Back at Patout [Patout being some three miles away]. Q. What became of it? A. Arnould bought it. Q. When? A. Years ago. Q. Did you mortgage that land to Kemper under this agreement? A. No, sir. Q. Then this 80-acre tract you sold to Arnould is not included in this agreement? A. No, sir. Q. And you had only the two 80-acre tracts? A. Yes, sir. Q. The Arnould 80-acre tract and the 80-acre tract claimed by Prevost? A. Yes, sir. Q. Then it could not have been any other 80-acre tract mentioned in that agreement, except the one you are now suing for? A. I am suing for section 16. Q. If you had only two 80-acre tracts, and you sold one to Arnould and mortgaged one to Kemper, then the one you are now suing for must be the one you mortgaged to Kemper? A. I don't know about that. Q. This act [referring to the act whereby Kemper mortgaged to the plaintiff the land which he had bought in at sheriff's sale, pursuant to the agreement of November 29, 1869, which is

attached to and made part of the said act] says 80 acres, and I want to know which 80 acres was intended by it? A. I don't know."

## Opinion.

The subject of the agreement of November 29, 1869, between plaintiff and Kemper, was the plantation fully described in the dation en paiement from Mrs. Penn to the plaintiff and his sister, Mrs. Rodgers, and the dation en paiement included "another tract of 80 acres adjoining the above-described [Fuselier] tract." Pursuant to said agreement, therefore, Kemper (with Mrs. Rodgers) bought in the 80-acre tract, with the rest of the land, at the sale by the sheriff, and, still pursuant to said agreement, he paid to the plaintiff $1,000 in cash, and gave notes for the balance of the price, secured by mortgage on his interest in the land so purchased; including, by description, the 80-acre tract. He was subsequently evicted from the Fuselier tract, and was consequently released from the obligation to pay the notes so given, but he was never evicted from the 80-acre tract, and until the institution of this suit his title thereto had not been questioned; and, so far as we are informed, he has never demanded or received the $1,000 in cash.

Under these circumstances, and in view of the fact that Kemper held by a sheriff's deed, as owner, and of the additional fact that the defendant now before the court acquired upon the faith of that deed, and (with his authors) had been in actual, notorious, continuous, and undisturbed possession for more than 10 years before the filing of this suit, it is evident that the plaintiff has no case.

It is therefore, ordered, adjudged, and decreed that the judgment appealed from, rejecting plaintiff's demand, quieting defendant in his possession, and dismissing and rejecting the demands against the warrantors, respectively, be affirmed at the cost of the plaintiff.