(42 South. 263.)

No. 15,716.

PECOT v. PREVOST et al.

(Feb. 12, 1906. On Rehearing, Nov. 26, 1906.)

1. PETITORY ACTION—COMMON SOURCE OF TITLE.

Where, in a petitory action, the pleadings or the evidence show that the parties trace their titles to the same source, neither can attack the title of their common author.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Real Actions, § 23.]

2. SAME—POSSESSOR IN GOOD FAITH—RENTS AND PROFITS.

A possessor in good faith is liable for rents and revenues from judicial demand only.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Real Actions, § 34.]

3. COVENANTS — WARRANTY OF TITLE — EVIDENCE.

Where a vendee buys real estate by a description which does not correspond with that by which he sells, and, being sued in eviction, calls his vendor in warranty, without alleging error of description in the title by which he acquired, he ought not to be permitted to prove such error by oral testimony; and, should such description fail to identify the property from which he is sought to be evicted with that sold to him, he cannot recover on the demand in warranty, but must be relegated to some other action for the assertion of his claim against such vendor.

4. PETITORY ACTION — LIABILITY OF WARRANTOR.

The defendant in a petitory action is entitled to the same judgment for fruits and revenues against his warrantor that the plaintiff gets against him.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Action by L. F. Pecot against Demas Prevost; W. B. Kemper and others being called in warranty. Judgment for plaintiff, and defendant and warrantors appeal. Granted and affirmed.

Percy Saint, for appellant Prevost. D. Caffery & Son and Charles Frank Borah, for appellants Kemper and Roussel. Foster, Milling, Godchaux & Sanders and Joseph W. Carroll, for appellant Carroll. Placide P. Sigur and J. Sully Martel (Beattie & Beattie, of counsel), for appellee.

### Statement.

MONROE, J. This is a petitory action for the recovery of a tract of land, which the plaintiff, in his petition, describes as "a certain piece or parcel of land, situated in this parish [of St. Mary] containing 80 superficial acres, the northeast eighth of quarter section sixteenth, reserved for school purposes, in township fourteen (14), range (8) east, west of Bayou Teche, bounded west by the eighth of said section purchased this day by Jacob Fridley, and south by a portion of said section purchased by C. Bonin this day," etc.

Plaintiff sets forth the chain of title under which he claims said tract, alleges that defendant is in possession thereof as a trespasser, and prays that defendant be cited, and that he have judgment for the property and for rents and revenues to the amount of $2,000.

The defendant, for answer, says "that he is the owner of the tract of land described herein" by purchase from Mrs. Alix Hebert (widow Prevost), and William B. and J. P. Kemper and G. A. Roussel, by acts of date February 6, 1889, and March 8, 1896, which he mentions as having been duly executed and recorded, but which are not filed with, or annexed to, his answer; "that he has been in the full, peaceable, uninterrupted, and exclusive possession of said land since the dates of his aforesaid purchases; and that his authors were likewise in possession, under good and valid titles, translative of property, for more than 10, and as long as 30, years, and he pleads the prescription of 10 and 30 years."

He alleges that he has expended $2,400 in improvements and taxes, and prays that his vendors be called in warranty, and that there be judgment in his favor, etc.

W. B. and J. P. Kemper and G. A. Roussel, called in warranty, except that plaintiff's petition is vague and inconsistent, and discloses no cause of action; and, answering the demand in warranty, they admit that they sold to the defendant the undivided one-half of the E. ½ of the N. E. ¼ of section 16, township 14 S., range 8 E., but deny that plaintiff has or claims any title to said lands. They allege that they acquired the tract so sold by them from Charles Carroll, as containing 49.60 arpents, and, though the description is somewhat varied, that the tract so acquired is the same as that sold to the defendant; that Carroll acquired said land at a sale made by the sheriff under a writ against the Phœnix Planting & Manufacturing Company, Limited; that said company acquired from the Bank of Commerce; that the Bank of Commerce acquired at a sale made by the sheriff under a writ against David R. Calder; that Calder acquired from Louis Leon; "that Louis Leon acquired title from L. F. Pecot, plaintiff herein, by act of sale

* * * in which the land, by error of the notary, was not specifically described, but which was intended to be covered by said sale, and which was, in fact, so transferred —the said Pecot transferring to the said Leon the land so acquired from his mother, and evidencing his intention to do so by delivering to and placing his vendee in possession of the lands herein mentioned, and so far as your respondent knows does now recognize the title emanating from said sale; that said Pecot acquired said lands from his mother, Eloise Pecot; that Eloise Pecot acquired from Clara Penn Rogers, who acquired same, in indivision with W. B. Kemper, under the execution of a judgment of Clara Penn Rogers and Henry Penn against Widow Eugenie Deyres, whose husband acquired the same in 1850." They allege possession for more than 30 years, plead prescription, call their vendor in warranty, and pray for judgment.

Charles Carroll, called in warranty, answers "that the description of the property sued for does not affect the description of the property upon which he is called in warranty; that said description calls for a much less quantity of land, and does not describe the land sold by him." Further answering, he avers that he purchased at a sale made by the sheriff, under a writ against the Phœnix Planting & Manufacturing Company, a large quantity of land, including that referred to in the answer and call in warranty filed in behalf of his vendees; that said company acquired said land from the Bank of Commerce; that the Bank of Commerce acquired it at a sale made by the sheriff under a writ of execution issued against David R. Calder; and that Calder acquired it from Louis Leon. He alleges that the plaintiff had full knowledge of these sales and is estopped thereby with respect to the claim now asserted by him. He further alleges possession in him-

PECOT v. PREVOST.

self, his authors, and his vendees, pleads prescription, asks that Louis Leon be called in warranty, and prays for judgment.

So far as we are able to discover, Leon was not cited and made no appearance. There was judgment in the district court in favor of the plaintiff and against Demas Prevost, in favor of Prevost and against the Kempers and Roussel, in favor of the Kempers and Roussel and against Carroll, and reserving Carroll's rights as against his warrantor; and Prevost and Carroll prosecute this appeal. In the course of the trial, there was offered in evidence the record, as also the testimony adduced, in the case of Penn v. Prevost, in which Henry Penn, Jr., sought to recover the other undivided half interest in the tract described in the petition, and in which the title of the defendant, being the same defendant who is now before the court, was maintained; and the statement of that case (Penn v. Prevost, 114 La. Ann. 1080, 38 South. 865), up to a certain point, is the statement of the instant case. The facts disclosed by the two records are as follows, to wit:

February 1, 1845, Henry Penn, Sr., bought from G. L. Fuselier a sugar plantation, described as containing about 400 arpents of land, and on September 7, 1850, he bought from R. M. Sawyer, school superintendent of the parish of St. Mary, a tract described as:

"A certain piece or parcel of land situated in this parish [of St. Mary], containing 80 superficial acres, the northeast eighth of quarter of section sixteenth, reserved for school purposes, in T. 14 S., R. 8 E., bounded west by Jacob Fridley, and South by a portion of said section purchased by C. Bonna, this day," etc.

The property so acquired (that is to say, the plantation and the tract so described) was subsequently adjudicated to the widow of Henry Penn, Sr., and was thereafter, sold under execution to W. P. Kemper and Clara Penn, wife of F. H. Rogers, purchasing in indivision. The sale so made of the

117 LA.—25

plantation was afterwards set aside, and it was sold under another execution to F. H. Rogers. The 80-acre tract, however, remained the property in indivision of W. P. Kemper and Mrs. Rogers, and was supposed to adjoin, and was described as adjoining, the plantation; but it was ascertained at a later date that, by reason of an error in the establishment of the range line, it did not so adjoin, but that there was a narrow strip (between two and three arpents in width) between it and the plantation. Notwithstanding this error of description, it was found, and held, in the case of Penn v. Prevost, supra, that W. P. Kemper and Mrs. Rogers had acquired a good title to said tract, and that the defendant (being the same defendant now before the court) had, through mesne conveyances, acquired the undivided half interest of Kemper. The subject of this litigation is the undivided half interest formerly owned by Mrs. Rogers, to which the litigants, respectively, have undertaken to establish title as follows:

March 26, 1876, Mrs. Rogers sold to Mrs. (Widow) Octave Pecot an undivided half interest in 959 acres of land, described as swamp; "also the undivided interest of the first appearer in and to 93 acres of land, lying and being situated in the Cypremort Prairie, all in the parish of St. Mary, bounded north by the lands of H. S. Buckner, east by land of A. S. Fuselier, south by the land of W. Dyer and E. Prevost, and west by the land of E. Prevost."

January 17, 1880, the interest as thus described was sold, under execution against Mrs. (Widow) Pecot, to L. F. Pecot.

October 10, 1881, L. F. Pecot sold to Louis Leon the plantation which had been bought by Henry Penn, Sr., from Fuselier, the title to which, as acquired by W. P. Kemper and Mrs. Rogers, had been subsequently devested (in the manner stated in the opinion in Penn v. Prevost), and had been (as it seems) acquired by F. H. Rogers, from whom, appar-

ently, it had passed to L. F. Pecot. There was also included in the sale from Pecot to Leon the undivided half interest in the 959 acres of swamp land, which Pecot had acquired at the sale under the execution against Mrs. (Widow) Pecot, but the tract last above described (in the sale from Mrs. Rogers to Mrs. Pecot) was not included.

November 14, 1885, Louis Leon sold to D. R. Calder certain property described as follows:

"(1) That certain tract * * * in Cypremort Prairie * * * being part or portion of what is known as the 'Rogers (or Penn) Plantation.' having a superficial area of 157 arpents, more or less, bounded north by the land of Henry Penn; south in part by the public road leading from the town of Franklin to the Cypremort woods, and in part by the lands of J. Massey; east by lands of Emile Prevost; and west by lands of Frederick Pellerin. * * * (2) The undivided half of a certain tract or parcel of land lying and being situated in the Cypremort Prairie, parish of St. Mary, the whole having a superficial area of 80 arpents, more or less, and bounded on all sides by lands of Emile Prevost, and situated on the west side of the first described tract of land."

March 26, 1892, the sheriff, under an order of seizure and sale against D. R. Calder, sold to the Bank of Commerce the tract first above mentioned, as described, and he likewise sold a tract described as follows, to wit:

"(4) That certain tract of land, lying and being situated in the Cypremort Prairie, containing a superficial area of 49.60 arpents, bounded north by lands of Emile Sillan, east by lands of David R. Calder, south by public road, west by lands of Nicodemus Colbert."

July 26, 1892, the Bank of Commerce sold the tract as thus described (with other property) to the Phœnix Planting & Manufacturing Company, Limited.

March 7, 1896, the sheriff, under an execution against the Phœnix Planting & Manufacturing Company, sold according to the same description to Charles Carroll, who on the same day and by the same description sold to W. P. and J. P. Kemper and G. A. Roussel (in the proportion of one-fifth to J. P. Kemper and two-fifths each to W. B. Kem-

per and G. A. Roussel), and they upon March 28, 1896, sold to Demas Prevost (the defendant) "the undivided one-half of the E. ½ of the N. E. ¼ of Sec. 16, T. 14 S., R. 8, * * * containing 98 arpents, or 82 acres, more or less, situated in the parish of St. Mary, * * * being bounded as follows: North and east by the property of Mrs. Alix Hebert, widow of the late Emile Prevost, south by the lands of Duvillier Rodriguez, and west by the land of the said Mrs. Alix Prevost, widow, etc. This being the same property which the present vendors acquired by purchase from Charles Carroll * * * as per act * * * in which said property is described as follows, to wit" (and then follows the description heretofore given).

The evidence shows, and it was so held in the case of Penn v. Prevost, that the heirs of W. P. Kemper, in 1891, took possession of the tract in question and rented it to E. Prevost, who sublet it to P. Broussard, and that on February 15, 1894, said heirs sold to Mrs. (Widow) W. P. Kemper "all their right, title, interest, claim, and demand in and to all the property belonging to them, which they acquired from the estate of their deceased father * * * and the estate of their sister, Mrs. Elize Blanche Kemper, deceased, wife of Carroll Barton, * * * consisting of the undivided 27/56 of the Glencoe Plantation; * * * also the Pategonia Plantation; also the undivided half of the E. ½ of the N. E. ¼ of Sec. 16, T. 14 S., R. 8 E., * * * containing 98 arpents, more or less, or about 82 acres."

October 3, 1894, Mrs. (Widow) W. P. Kemper sold the tract as thus described to Ernest Prevost, who on January 18, 1895, sold it by the same description to Mrs. Alix Hebert, widow, etc., who on February 1, 1899, made a sale to the defendant of a tract described as follows, to wit:

"That certain tract of land, lying and being situated in the Cypremort Prairie, * * * forming part of the Old Alix Plantation,

\* \* \* beginning at the Kemper line, running westward 6 chains and 50 links; thence north, 40 links, to a reserved road; thence west, 13 chains and 50 links, to gate of cane yard; thence north, along cane yard, 6 chains and 45 links; thence west, to within 3 feet of a large canal; thence along said canal, 33 chains 54 links; thence east, within 3 feet of another large canal, 22 chains 29 links, to within 3 feet of Henry Penn's ½ fence—thus giving a superficial area of 103 arpents, and bounded north by land of vendor, south by plantation reserved road, east by lands of Kemper and Penn, and west by lands of vendor."

## Opinion.

It is said that the description which plaintiff gives in his petition is insufficient to identify the tract of land in which he asserts title, but that description is identical with the description by which the school superintendent sold the tract to Henry Penn, Sr., and agreeably to which the defendant, when sued by Henry Penn, Jr., was quieted in title and possession quoad the half interest which had belonged to William P. Kemper. Moreover, the defendant and his warrantors are now asserting a title (to the half interest which formerly belonged to Mrs. Rogers) which is derived, through mesne conveyances, from the sale so made. It is evident, therefore, that they are in no position to deny that Penn became the owner of the property under the description in question. Whether the plaintiff ever became the owner of the half interest in that property which he here claims is another question; but, for the purposes of this litigation, that question is to be determined by the same considerations, since the title which the defendants set up, if it exist at all, is derived from the title held by the plaintiff. We therefore start with the proposition that the title of the plaintiff was acquired at a sale made by the sheriff under a writ issued against Mrs. (Widow) Octave Pecot January 17, 1880; and to the question, does the record show that plaintiff has parted with the title so acquired? we answer in the negative. It is said that it was plaintiff's intention to sell to Leon his interest in

the tract in question at the time that he sold certain other property; but this averment rests upon nothing but an inference for which there appears to be little foundation, and which can hardly be accepted as a substitute for a title to real estate. The "other property" which the plaintiff sold to Leon is described in the deed. The tract in question is not so described, nor is it in any way referred to; nor can it be said that it formed part of the plantation which was included in the sale (being the original Penn Plantation), since that plantation, had long before been sold, under a judgment obtained by J. D. Seybourn (Seybourn v. Deyries et al., 25 La. Ann. 483), to F. H. Rogers, from whom it had apparently passed to the plaintiff, whilst the tract in question had been held in indivision by W. P. Kemper and Mrs. Rogers, and at the time of the sale of the plantation to Leon was held in indivision by the widow and heirs of Kemper for one half, and plaintiff for the other; nor yet do we find that Leon, or Calder, or any one claiming under them, prior to March 28, 1896 (when the Kempers and Roussel undertook to make the sale to the defendant), was ever put in possession, or ever took possession, of the half interest in said tract which is here claimed. In Penn v. Prevost, W. B. Kemper (being the defendant's warrantor in that case, as he is in this) was interested in showing possession in the defendant and his authors (quoad the half interest there claimed), and the utmost that he could do was to prove that upon the death of his father in 1891 he had taken possession of the tract, as representing the undivided half interest which belonged to his father's widow and heirs, which possession having been thereafter maintained, it was held that defendant's title to said half interest, though good without it, was confirmed by the prescription of ten years (Penn v. Prevost, 114 La. Ann. 1087, 38 South. 865). The evidence was, however, conclusive, as we thought (and

it has been offered in this case, and has not been affected by anything else that we find in the record), that prior to 1894 the land had been (for the greater part of the time during which Henry Penn, Sr., had owned it) open to the world and in the possession of no one in particular. The plaintiff, therefore, establishes his title, and the Kempers and Roussel, as vendors and warrantors of the defendant, claiming under the plaintiff, fail to establish the alienation upon which they rely; in fact, they fail to identify the land acquired by them from Carroll as the land sold by them to the defendant. Thus W. B. Kemper, testifying in the instant case, is interrogated and answers as follows concerning the description (which he assumes was intended to apply to the tract here in question) contained in the act by which he and his associates acquired, to wit:

"Q. Do you know what lands these are, from the description? A. When I first read it I said, 'This does not describe anything.' I asked several questions to Carroll and his lawyer, Chas. A. O'Neill. Q. What land would you pick out from this description in the act: 'Fourth, That certain tract of land, lying and being situated in Cypremort Prairie, containing a superficial area of 49.60 arpents, bounded north by lands of Mrs. Emile Silan, east by lands of David R. Calder, south by public road leading from Franklin to Cypremort Prairie, and west by lands of Nicodemus Colbert?' A. I took that to mean one-half of the land we are disputing now—one-half of the school tract. My idea was that the title was badly written. Q. If I gave you that description by itself, could you locate the land out in that country? A. No, sir; it describes nothing."

When, therefore, the Kempers and Roussel undertook to sell to the defendant the undivided half of the school tract, which they assumed to have acquired under a description which described nothing, they described it as "the undivided one-half of the E. ½ of the N. E. ¼ of Sec. 16, T. 14 S., R. 8 E., * * * containing 98 arpents, or 82 acres, more or less, * * * bounded * * * north and east by the property of Mrs. Alix Hebert, widow, etc.; this being the same

property which the present vendors acquired from Charles Carroll," which we take to be a correct description of the tract in which the plaintiff is claiming an interest and of which the defendant is in possession.

The plaintiff obtained judgment evicting the defendant from the property and condemning him to pay $120 a year, as rents and revenues, from and inclusive of the year 1897. We do not, however, find the defendant to have been a possessor in bad faith. He is, therefore, liable for the rents and revenues only from judicial demand. Civ. Code, art. 503; Miller v. Shumaker, 42 La. Ann. 401, 7 South. 456; Durbridge v. Crowley et al., 44 La. Ann. 75, 10 South. 402. Neither the defendant nor his immediate warrantors appear to complain of the judgment rendered in favor of the former and against the latter. It will therefore remain undisturbed.

We are unable to see our way to the affirmance of the judgment against Carroll, though the testimony, so far as it goes, and the general aspect of the case, strongly suggest that it was the understanding that he was selling the same property which his vendees, by another description, sold to the defendant. It is, however, conceded that the act of sale does not so read, and his vendees do not, in their pleadings, allege error, or pray that it be corrected. Under these circumstances, we think the objection to parol testimony, offered to prove that other property than that described was intended to be sold, was well made and was properly sustained, and we are unable to see how the vendor, Carroll, can be condemned upon a claim for the warranty of the title to property that he is not shown to have sold. Beyond this, there is judgment against him for $1,600, on account, apparently, of his warranty of title to an undivided half interest in about 95 arpents of land, whereas he sold 949.51 arpents, including a sugar house and other improvements, for $26,079, and the evidence in

the record does not afford a basis upon which the proportionate value of the half interest in the 95 arpents can be ascertained. If the land described in the act of sale executed by Carroll has no existence, or if he is unable to put his vendees in possession of it, they probably have a remedy in some other direction; but they have no action in warranty against eviction from land which, according to the record before us, he did not assume to sell to them.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside and reversed, in so far as it awards damages, in the form of rents and revenues, to the plaintiff, for the period anterior to the judicial demand herein, and in so far as it condemns Charles Carroll upon the demand in warranty and for costs. It is further adjudged and decreed that said judgment be amended by reserving to W. B. and J. P. Kemper and G. A. Roussel the right to assert, as against said Carroll, in some other proceeding, whatever claim they may have arising out of the transactions which have been herein considered. It is further adjudged and decreed that in other respects said judgment be affirmed; the said W. B. and J. P. Kemper and G. A. Roussel to pay all the costs.

### On Application for Rehearing.

PER CURIAM. Rehearing granted as to the claim of defendant against his immediate warrantors for rents and revenues, and otherwise refused.

### On Rehearing.

PROVOSTY, J. In the opinion heretofore handed down in this case the only reference made to the demand of the defendant against his warrantors, is in the words:

"Neither the defendant nor his immediate warrantors appear to complain of the judgment rendered in favor of the former against the latter. It will therefore remain undisturbed."

On application for rehearing the defendant called the attention of the court to the fact that his counsel had filed a supplemental brief complaining of the judgment. This brief, which was a mere slip of a brief, had escaped the court's attention in the multitude of briefs in the case. The court at once, on its attention being attracted to the matter, agreed with defendant that an error had been committed, and granted a rehearing for the purpose of correcting the oversight.

Article 2506 of the Civil Code provides that:

"When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:
"(1) The restitution of the price.
"(2) That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.
"(3) All the costs occasioned, either by suit in warranty on the part of the buyer, or by that brought by the original plaintiff.
"(4) The damages, when he has suffered any, besides the price that he has paid."

Therefore the defendant is entitled to have the same judgment against his warrantors for the fruits and revenues that the plaintiff has had against him.

It is therefore ordered, adjudged, and decreed that the decree heretofore handed down in this case be, and the same is, hereby amended, so as to read as follows:

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside and reversed, in so far as it awards damages, in the form of rents and revenues, to the plaintiff, for the period anterior to the judicial demand herein, and in so far as it condemns Charles Carroll upon the demand in warranty and for costs. It is further adjudged and decreed that said judgment be amended by reserving to W. B. and J. P. Kemper and G. R. Roussel the right to assert, as against said Carroll, in some other proceeding, whatever claim they may have arising out of the transactions which have been herein considered.

It is further ordered, adjudged, and decreed that the defendant Demas Prevost have judgment against his warrantors, William B. Kemper, James P. Kemper, and George A. Roussel, in the sum of $1,600, the value of the said lands, with legal interest thereon from the date of the present judgment, and in the further sum of $120 per annum from judicial demand in this suit, with the same interest thereon as in this judgment he is condemned to pay to the plaintiff upon the like judgment rendered against him, and that the present judgment be against the said warrantors in the following proportions: Two-fifths against William B. Kemper; two-fifths against George A. Roussel, and one-fifth against James P. Kemper—and, further, that defendant pay the costs of this suit, and have judgment for the said costs against his said warrantors, William B. Kemper, George A. Roussel, and James P. Kemper, in solido.

That, as thus amended, the said judgment be, and is, hereby reinstated and affirmed.