## No. 10442.

### VICKSBURG, SHREVEPORT AND PACIFIC RAILROAD COMPANY vs. J. M. SLEDGE.

By Act 3, June 1856, Congress granted certain lands to the State of Louisiana for to aid in the construction of railroads. No conveyance in violation of the terms of this act of Congress to a railroad company could vest title in said lands to said company. It was a condition precedent to a conveyance of any of the sections that the road should be first constructed in sections of twenty consecutive miles each before the road could get title to any portion of the land coterminous with its constructed line. But where the act of the Legislature authorized the road to mortgage said land so granted and the mortgage is executed and bonds issued, secured by the same, the State can not by subsequent legislation abridge the mortgage rights acquired by third parties. Parties who have acquire title to the road through a sale by a foreclosure under said mortgage, have the legal title to said land as against a party who claims no title, except by possession, and who went on the land expecting it to be thrown open to public sale and entry. The government of the United States is the only claimant who can contest the right to the forfeiture of said land for the non-performance of the condition subsequent required by the act of Congress, as the State of Louisiana is estopped from declaring the forfeiture by reason of the authorization to the railroad company to mortgage said land.

The government of the United States, not having asserted by legislative act, or judicial construction the forfeiture for the breach of the condition, the apparent legal title is in the railroad company acquiring rights under the foreclosure of said mortgage.

A plaintiff in a petitory action is not bound to show title as against the world against a new trespasser.

APPEAL from the Second District Court, Parish of Webster. Boone, J.

---

*Stubbs & Russell* and *Wise & Herndon* for Plaintiff and Appellant.

---

1. In a grant of lands by Congress to aid in the construction of a railroad, "*there be and hereby is granted,*" are words of absolute donation; import an immediate transfer of title and vest

Railroad Company vs. Sledge.

a present title in the grantee, though a location of the road and filling of its map is necessary to give precision and attach it to particular tracts. The location and filing accomplishes this.

2. The condition in such a grant, that "if the road is not completed within a certain time, no further sale shall be made, but the land shall revert to the United States," is a *condition subsequent*.

3. Time not being the essence of the grant it is not forfeited *ipso facto* by the failure of the company to perform the condition, but to enforce the forfeiture action must be taken by authority of Congress.

4. The company had still a right to construct the road *out of time*, and until in some way Congress takes advantage of the breach, it is the duty of the government to give the company the benefit of the grant. 8 Opin. Atty. Gen. 244-256; 11th do 47; 16th do 397-572; H. R. Ex, Doc. 47th Cong. 29, p. 35, Atty. Gen. Brewster; 9 Wall 95; 94 U. S. 743; 97 U. S. 291; 103 U. S. 426; 104 U. S. 329; 106 U. S. 360; 113 U. S. 629; 115 U. S. 306.

5. No one can take advantage of the non-performance of a "a condition subsequent" but the grantor or his heirs or successors, and if they do not see fit to assert their right to enforce a forfeiture, the title remains unimpaired in the grantee.

6. On the failure of the company to complete the work, a forfeiture of the grant, if it resulted therefrom, can be enforced only by the United States, by judicial proceedings, or the action of Congress. 21 Wall. 60; 115 U. S. 306; 32 Fed. Rep. 899.

7. By the terms of a grant of land to a State to aid in the construction of a railroad within its bounds, the State is a mere trustee or mutual agent of the grantor and the beneficiary.

8. The grant is to the enterprise and upon the completion of a railroad between the termini named and on the route designated in the grant, its acceptance by the trustee, and certification thereof to the grantor, the trust is at an end and is terminated *ex necessitate*.

9. The road opposite to the premises in controversy, having been completed and accepted, the title, however imperfect whilst encumbered, if it may be so termed, by the uses to which the lands were to be applied, has become perfect and indefeasible. 33 Fed. Rep. 907.

10. Lists of lands selected by the grantee and certified by the General Land Office convey as complete title as patents. Legal title passes as completely by such certification if patent is not expressly required by law, as though patent issued. U. S. Rev. Stat. Sec. 2449; 6 Land Dec., 543; 115 U. S. 102; 116. U. S. 381.

11. An estate in fee cannot be defeated for a breach of a condition subsequent by a legislative act, unless the condition is expressed in the deed. 2 Bl. Com. 153-4; 4 Kent Com. 120, 123; 16 Wall. 223.

12. The condition subsequent is the resolutory condition of the civil law. The contract is not dissolved of right by failure to comply; the party complaining must either sue for a specific performance or dissolution of contract. C. C. 2046.

13. The act of the Legislature transferring the lands to the company contained no provision in terms for forfeiture to the State, nor was there any subsequent agreement providing for forfeiture, therefore there could be no forfeiture by the State except by judicial proceeding. 92 U. S. 66.

14. The State had a right in furtherance of the object of the grant, to make any disposition of the lands it saw fit, "so that it did not cut off the right of the United States to compel the application of the lands to the purposes for which they were granted or prevent their forfeiture in case the company fail to perform the conditions of the grant." 32 Fed. Rep. 906.

15. The State transferred the lands to the company; specially authorized the mortgage of same to secure the loan to build the road; the mortgage was executed. Third parties became owners of the debt secured by this mortgage; the mortgage was closed and the property and all its rights and privileges acquired by plaintiff with the full permission and in the mode indicated by the State; the State then is privy to all these proceedings and is estopped from divesting our vested right destroying our right as third parties to comply

with the condition subsequent and thus earn the lands she held in trust for the enterprise. Therefore Act 39 of 1879 is null. 1 Kent, 356; Cooley Cons. 357; 16 Wall., 203; Cons. La. 155.

16. Under the terms of the Act of Congress, the lands have become the property of the railroad complying with the condition subsequent by constructing the road between the termini named and along the route designated.

17. As against a mere trespasser who sets up no title, plaintiff is not bound to show a title perfect against the world. 12 Ann. 748; 15 Ann. 76; 35 Ann. 612.

*Young, Drew & Stewart* for Defendant and Appellee.

The opinion of the court was delivered by

McENERY, J. Plaintiff alleging ownership to the southeast quarter and west half, and noreast quarter of northwest quarter, east half and northwest quarter of northeast quarter of section 5, township 17, north range 10 west, situated in the parish of Webster, containing 400 acres valued at $2400, brought suit against the defendant now occupying the land, and prays to be decreed the owner of said land, and that the defendant be evicted therefrom.

Defendant pleads a general denial. He admits that he is in possession of and occupies the land; that he has been in the possession thereof for twenty-five years, with a view of acquiring it when opened for entry by the United States government. He alleges possession in good faith, and claims, if evicted, a judgment for the value of improvements placed on said land by him, amounting to two hundred dollars.

By act of Congress, approved June 3, 1856, the Federal government granted to the State of Louisiana, for the purpose of aiding in the construction of a railroad from the Texas line, in the State of Louisiana, west of the town of Greenwod, via Greenwood Shreveport and Monroe, to a point on the Mississippi river opposite Vicksburg, every alternate section of land, designated by odd numbers for six sections in width on each side of said road, and in case any of the said odd sections were sold by the United States, or otherwise taken, when the route or line of the railroad is definitely fixed, then by an agent appointed by the government, it was authorized to select, subject to the approval of the Secretary of the Interior, from the lands of the United States, not exceeding fifteen miles from the road, so much in alternate sections or parts as shall be equal to the lands in the six miles which have been disposed of, and provided, that the lands thereby granted shall be exclusively applied to the construction of said road, and shall be disposed of only as the road progresses.

SECTION 3. *That said lands hereby granted to the said State shall be subject to the disposal of the Legislature for the purpose aforesaid, and no other*, and the said railroad shall be and remain a public highway for the use of the government of the United States, free from toll or charges upon the transportation of any property of the United States.

SECTION 4. That the lands hereby granted to said State shall be disposed of only in the manner following. That is to say that a quantity of land not exceeding 120 sections, and included in a continuous length of twenty miles of said road may be *sold*, and when the Governor of said State shall certify to the Secretary of the Interior, that any twenty miles are completed, then another like quantity of land hereby granted may be sold; and so from time to time until said road is completed, and if said road is not completed within ten years, *no further sales shall be made, and the land unsold shall revert to the United States.* U. S. Statutes at large, page 18.

The State of Louisiana accepted the trust in the above recited act of Congress, and on March 11, 1857, by act No. 98, session acts of that year, recited in the preamble of said act, in accepting said grant and trust, that—

"Whereas, by an act of Congress, approved June 3, 1856, donating lands to the State of Louisiana to aid in the construction of railroads within said State, the Vicksburg, Shreveport and Texas Railroad Company is entitled to receive 420,924 acres of land, as shown by the following statement of the Commissioner of Public Lands."

The statement from the Commissioner, showing the amount of land that will accrue to said railroad company, is also embraced in the preamble. Section 1 of said act provides "that so much of the land, rights, powers and privileges as are granted to and conferred upon the State of Louisiana by an act of Congress, entitled 'an act making a grant of lands to the State of Louisiana, to aid in the construction of railroads in said State,' for the purpose of aiding in the construction of a railroad from the Texas line in the State of Louisiana, west of the town of Greenwood, via Greenwood, Shreveport and Monroe, to a point on the Mississippi river opposite Vicksburg, be and the same are hereby accepted upon the terms contained in said act of Congress, and the same are all and severally hereby and upon the same terms disposed of, granted to and conferred upon the Vicksburg, Shreveport and Texas Railroad Company, a body corporate, existing under the laws of the State of Louisiana; provided, the said railroad company shall, within ninety days from the approval of this act, accept of the same under

the conditions of said act of Congress, by a resolution of its Board of Directors."

Sec. 2, provided " that the line of the aforesaid V. S. & T. R. R., as definitely located by the Board of Directors as shown by the map of the same now, on file in the office of the Secretary of State, and which map is certified to be correct by the President, Secretary and Chief Engineer of said company, be and the same is hereby sanctioned and confirmed as the true line of said railroad and only admitting such slight variations as may be found necessary in the economy of construction."

Within the ninety days for the delay of accepting the same provided for in Sec. 1, the Railroad Company, accepted, complying with the provision of the act.

The present corporation plaintiff in this suit, controls and operates the railroad along the line and between the termini as designated in the Act of Congress.

It was not completed within the limit of ten years prescribed by the Act of Congress, but was completed and finished "out of time " in July, 1884, when the Governor certified to the Secretary of the Interior of its entire construction, between the termini and along the line proposed in the Act of Congress donating the land for the construction of said road.

By act 198, approved the 19th March, 1857, the State of Louisiana, "for the purpose of aiding in the construction of the Vicksburg, Shreveport and Texas Railroad Company granted to said Company 'the full and perfect right and power to mortgage and hypothecate all or any part of the lands granted by the United States to the State of Louisiana to aid in the construction of said Railroad by virtue of an act of Congress making a grant of lands to the State of Louisiana, to aid in the construction of Railroads in said State,' approved June 3d, 1856, and which grant has been accepted by the State of Louisiana by the act of the General Assembly, approved March 11th, 1857."

Sec. 2, enacts "that said Company shall have the right to include in any such mortgage all the rights, franchises, privileges and immunities of every kind which the State of Louisiana or said Railroad Company has or may have in to, and upon said lands, all which may be fully covered by such mortgage, said mortgage or mortgages may be made to secure any bond or bonds executed by said Company or loans made to said Company or to cover any debt contracted or to be contracted by said Company, and the interest accruing or to accrue on the same or either of them." In persuance of this act authorizing it to mortgage said lands granted and donated to said Railroad Company by the State of Louisiana, in carrying out the object and purposes of the work confided

to the State by the Act of Congress, to construct said road along the line and between the termini mentioned in said act, the Railroad Company on the following September, issued 2,000 bonds of $1,000 each, for the purpose of raising money to build and equip said railroad, and to secure the payment of the same executed a first mortgage upon the entire road, its rights, privileges and franchises, depots, appurtenances, etc., and its lands including those donated to it by Congress and the State of Louisiana. Previous to this mortgage, and only a short time after the acceptance of the grant of land by the Railroad Company by duly appointed agents in accordance with the acts referred to, making a donation of said lands, the lands were selected, listed and maps made of the same and filed in the Interior Department at Washington, at which time the lands were withdrawn from public sale or entry.

The mortgage executed by the Railroad Company was foreclosed and the property, including the lands donated by the State in persuance of the Act of Congress, was sold in the suit of Jackson et. als. vs. the V. S. & T. R. R. Co. The case went to the U. S. Supreme Court, and in the decree of that Court the mortgage was recognized as a valid one and operated as a lien upon all the property therein described. The case was sent to the Circuit Court for further trial and the final decree was rendered ordering the sale to be made in December 1st, 1879. In the decree ordering the sale all the mortgage property was included. Under the terms of the decree the Railroad with all its property, franchises, etc., was purchased by a Committee of bond holders, who organized under act approved 8th March, 1877, the Vicksburg, Shreveport and Pacific Railroad Company.

By Act No. 39, of 1879, the General Assembly of Louisiana declared the forfeiture of the lands donated by the State to the V. S. & T. Railroad Co. under and by virtue of Act 98, of 1857, for the reason the entire road had not been completed within ten years from the date of the grant, and donated said lands to the Red River and Mississippi Railroad Co. This road never had any actual existence and never constructed any line of railroad along the route and between the termini as proposed by the State and by the Congress of the United States.

The defendant entered on the land in 1886, for the purpose of acquiring a right to enter the same whenever it should be opened for public entry. He sets up no title in himself no does he connect himself with any title as agent, but relies solely upon his possession as *prima facie* evidence of title.

His contention is that the plaintiff has no title, and that the legal title to the land in controversy is in the State of Louisiana by virtue of the legislative act of forfeiture.

The Act of 3d June, 1856, by the Congress of the United States, passed a present interest in the lands to the State of Louisiana which became certain, by identity, when the sections were located and maps filed with the Secretary of the Interior.

The State conveyed these sections to the V. S. and T. R. R. Co. by Act approved March 11th, 1857.

No conveyance in violation of the Act of Congress could pass any title to the Company. It was a condition precedent to the conveyance of any of the sections that the road should be first constructed in sections of twenty consecutive miles each, before the road could get title to any portion of the land coterminous with its constructed line. 21 Wallace, p. 44.

The road had completed a portion of its line, from Vicksburg to Monroe, and from Shreveport to Marshall, Texas. That portion of its line between Shreveport and Monroe was not constructed within the ten years.

The Federal Government neither by legislative act or judicial construction has declared the forfeiture of the grant, and under the well recognized jurisprudence of the Federal Courts the legislature of the State of Louisiana, if the State had done no act to estop her from setting up an adverse claim to the present, plaintiff could forfeit the grant to the railroad on the ground of the non-fulfillment of the condition subsequent to said grant, the completion of the road within the fixed limits of ten years. 21 Wallace, 44.

The State of Louisiana by Act 198, of 1857, specially authorized "the V. S. and T. R. R. Co., to mortgage all the lands granted in aid of said railroad by the United States making a grant of lands to the State of Louisiana, to aid in the construction of railroads, in said State, approved June 3d, 1856, to secure the payment of any bonds, notes or other obligations made or executed by said Company." A mortgage was executed in pursuance of this act, and bonds secured by the same were issued. The road of the V. S. & T. R. R. Co. was run through the Parish of Webster, and it was unnecessary as claimed by defendant to record the mortgage in that parish to affect the land claimed by the road separated in Webster Parish. The recondition at the domicile of the Company was sufficient. Act No. 194, of 1856.

The mortgage was foreclosed and the property described in the act of mortgage, including the land now occupied by plaintiff, which was a part of the Congressional grant upon which the V., S. & T. R. R. Co., by the State was authorized to mortgage, was sold December 1, 1879,

and purchased by the mortgage creditors, who organized the present company, the plaintiff in this suit, under the laws of this State.

The owners of the bonds secured by the mortgage undoubtedly had a vested right in the mortgage, so far as the State of Louisiana was concerned.

The government of the United States could have complained of the manner of the execution of the trust by the State, but it has made no objection to the interpretation placed upon the act donating the lands by the State of Louisiana to said V., S. & T. R. R. Co.

The present plaintiff acquired title through the decree of the United States Supreme Court, which recognized the validity of said mortgage, and ordered all the property included therein to be sold to satisfy the same.

The State having authorized this act of mortgage under and by virtue of which said parties acquired rights, is estopped from impeaching the same and declaring it a nullity. Rights thus acquired cannot be destroyed by subsequent legislation.

The land in controversy was withdrawn from public sale and entry before the defendant went on the same. His entry thereon was unlawful, and as he sets up no title, other than his tresspass, he cannot dispute the apparent title of the plaintiff. Stille vs. Schull, 41 Ann. 816.

The plaintiff has an apparent legal title to the land by virtue of the sale to satisfy a mortgage specially authorized by the State of Louisiana.

By the act of the General Assembly authorizing said mortgage, the State is estopped from disputing the title and setting up title in herself, the original grantor, the United States government, can only take advantage of the non-performance of the condition subsequently attached to the grant. This may be done by legislative act or judicial construction. The government of the United States has made no assertion of the forfeiture, and the legal title to said land will remain in the plaintiff until there is some assertion of ownership on the part of the Federal government, for the breach of the condition by directing the possession and appropriation of the land, or that it be offered for sale or for settlement.

The defendant being in possession of said land unlawfully, without title, etc., as a tresspasser, is not entitled to a judgment for the value of the improvements placed on said land.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and it is now ordered, adjudged and decreed, that as against the defendant the legal title to the southeast quarter-section, the east half and northwest quarter of north-

east quarter and west half and northeast quarter of nortwest quarter of section five, township 17, range 10 west, containing four hundred acres, be declared to be in plaintiff, the Vicksburg, Shreveport and Pacific Railroad Company, and that the defendant be evicted therefrom and the plaintiff placed in peaceable possession of said land. It is further ordered that the reconventional demand of defendant for improvements be rejected—defendant to pay costs of both courts.