(63 South. 848.)

No. 19,719.

GOULD et al. v. BEBEE et al.

(Dec. 15, 1913.)

*(Syllabus by the Court.)*

1. TRESPASS (§ 19*)—ACTION FOR DAMAGES—TITLE.

Where a plaintiff sets up title to real property and seeks damages from a trespasser, who

in turn does not set up title in himself, or in his alleged cotrespassers, it is not necessary for the plaintiff to show a title perfect in all respects; and, even if there be defects in the plaintiffs' title, they are not available as a defense to the trespasser. Jamison v. Smith, 35 La. Ann. 609; Stille v. Shull, 41 La. Ann. 816, 6 South. 634; Railway Co. v. Sledge, 41 La. Ann. 896, 901, 6 South. 725.

[Ed. Note.—For other cases, see Trespass, Cent. Dig. §§ 18–31; Dec. Dig. § 19.*]

2. EVIDENCE (§ 106*)—ADMISSIBILITY—CHARACTER.

"It is to-day generally said that (subject to specific exceptions, some of them doubtful) that the character of a party in a civil cause is inadmissible; i. e., that it cannot be used, as it is for or against a defendant in a criminal case, to indicate the likelihood that the act in issue was or was not done." Wigmore, § 64, p. 134.

[Ed. Note.—For other case, see Evidence, Cent. Dig. §§ 177–187; Dec. Dig. § 106.*]

Appeal from Twelfth Judicial District Court, Parish of Vernon; Don E. So Relle, Judge.

Action by George J. Gould and others against Pleasant Bebee and another. From judgment for the defendant named, plaintiffs appeal. Reversed and rendered.

Hudson, Potts & Bernstein, of Monroe, and Monk & O'Neal, of Leesville, for appellants. C. E. Hardin, I. C. Boyd, and F. M. Wood, all of Leesville, for appellee.

SOMMERVILLE, J. Plaintiffs alleged themselves to be the owners of certain tracts of unimproved land in the parishes of Vernon and Sabine, in this state, and that the defendants herein conspired one with the other to enter upon and did enter upon said property, during the months of May, June, July, and August, 1911, and that they did cut and remove therefrom merchantable long-leaf pine timber standing and growing on said land, knowing the same to be the property of your petitioners, and that the amount of property cut, destroyed, and removed by defendants amounted to 224,096 feet of long-leaf yellow pine timber. They further allege that said timber had been

converted by defendants into cross-ties, and removed. They then pray for writs of sequestration to issue; and for judgment in solido against Pleasant Bebee and R. M. Broomfield, defendants, for 224,096 feet of timber at the price of $15 per thousand feet, aggregating $3,361.44, with interest from date of judgment until paid, and that said property so seized and sequestered be decreed to be their property, etc.

The sheriff of Vernon parish seized 1,707 pine cross-ties, valued by defendant Bebee at $515.10, and the sheriff of Sabine parish seized 819 cross-ties, valued by defendant Bebee at $245.70, in his applications to bond said sequestered property, and said ties were bonded by defendant.

Defendant Bebee answered, denying the cutting or destroying of timber on the lands of plaintiffs, and the alleged conspiracy with his codefendant, Broomfield. He further alleged that he purchased the cross-ties seized in this suit for a valuable consideration, and that he is the legal and bona fide owner thereof. He asked that he be decreed to be the owner of said ties, and for judgment in reconvention in the sum of $650 as damages. On the trial of the cause defendant waived his claim for damages, except in the sum of $275, being $125 for attorney's fees and $150 for expenses.

Broomfield, the codefendant, was not cited.

There was judgment in favor of defendant Bebee and against plaintiffs, dismissing the suit, without damages.

Plaintiffs only have appealed.

The trial of the cause consumed some time, and there is quite a large record of oral evidence. But most of this testimony should not have been admitted over the objections made to its admissibility.

[1] Plaintiffs set up title to the land referred to in their petition, and alleged that defendants had trespassed thereupon. Defendant Bebee, who alone appeared, denied the trespass, but did not set up title in himself. On the offer of proof of title, objection was made by defendant on technical grounds, and these objections were sustained; that was error. A mere alleged trespasser, who sets up no color of title in himself, or cotrespassers, cannot question the validity of plaintiffs' title, and it is not necessary for such plaintiff to show title perfect in all respects; and, even if there be defects in plaintiffs' title, they are not available as a defense by an alleged trespasser who does not claim title. This point has been definitely settled in Jamison v. Smith, 35 La. Ann. 609; Stille v. Shull, 41 La. Ann. 816, 6 South. 634; Railway Co. v. Sledge, 41 La. Ann. 896, 6 South. 725, and other authorities. A prima facie title is good against trespassers.

The evidence offered on behalf of plaintiffs shows that the ties sequestered had been cut on their lands, and had been hauled to certain designated places along the line of the Kansas City Southern Railway Company, or the Kansas City, Shreveport & Gulf Railway Company, and that these same ties were claimed by defendant Bebee to be his property. Broomfield, codefendant with Bebee, appeared as a witness on behalf of plaintiffs, and admitted the cutting and hauling of the ties from the lands of the plaintiffs, and the delivery of them to the defendant Bebee. He further testified as to the conspiracy between him and Bebee, whereby he was to buy ties from trespassers on plaintiffs' lands, and to sell the same to defendant Bebee. The testimony of Broomfield is denied, in toto, by Bebee, who testified that he bought the ties from Broomfield in good faith for a valuable consideration. In support of this evidence he stated that he had always required affidavits to be furnished by tie sellers, going to show that said ties were the property of the said sellers, under Act 275, 1910, p. 474. The evidence

shows in part, by his own witnesses, that he did not always require affidavits from tie sellers, and that the affidavits that he did sometimes require did not always state the number of ties sold, and that he was aware of the fact that the affidavits were not sworn to before the justice of the peace whose name had been attached to blank affidavits. The testimony of Bebee is confused and contradictory, and is not entitled to credit; while the testimony of Broomfield, the alleged coconspirator, bears the semblance of truth. The trial judge saw and heard Broomfield testify, accepted a part of his testimony, to the effect that the ties had been cut from plaintiffs' lands and sold by Broomfield to Bebee, but he further held that:

"Without going into an external review of all the evidence, suffice it to say that in my judgment plaintiffs have not shown by unquestionable testimony that Bebee had anything to do with the confessed depredations upon plaintiffs' timber by the various parties for whom Broomfield sold ties upon his own affidavits as to his ownership of the timber from which same were manufactured."

The testimony is conclusive that Bebee knew that Broomfield, his coconspirator, was selling to him ties from land belonging to others than Broomfield. He knew that Broomfield's land would not yield the number of ties which Broomfield was selling to him; but he sought to protect himself from criminal prosecution by requiring Broomfield to make affidavits to the effect that he was the owner of the ties sold by him. The obtention by Bebee of these affidavits, in view of the direct testimony of Broomfield, does not sustain his alleged good faith, or give him a good title to the stolen property.

After Broomfield had testified that:

"We [referring to himself and Bebee] were talking about ties, and I told him I was uneasy; some of the boys wanted me to sell ties for them, and I did not want to have any more to do with it; and I told him that I was selling for the boys up there, and that they had no land, and I was uneasy about the affidavits.

He told me that nobody would see the affidavits, that they were in his possession, and that they would stay there"

—he was asked the following question: "Was there anything said between you and Mr. Bebee relative to the ties being made on the Gould land?" Objection was made to the question on behalf of defendant, on the ground that it was illegal, and the objection was sustained. This was error. Plaintiffs had alleged that Bebee and Broomfield had conspired together and had gone on their land and taken ties therefrom, which allegation defendant Bebee had denied. It was competent to show that Bebee knew that the ties bought by him from Broomfield were made on the Gould lands.

[2] Defendant Bebee called certain character witnesses, and their testimony was heard over the objections of counsel for plaintiffs. This was error; and the admission of it has incumbered the record to a large and unnecessary extent.

"It is to-day generally said that (subject to specific exceptions, some of them doubtful) the character of a party in a civil cause is inadmissible; i. e., that it cannot be used, as it is for or against a defendant in a criminal case, to indicate the likelihood that the act in issue was or was not done. This is laid down as a general rule, to which a specific exception, if any, must be clearly made out. This result, to be sure, was not always so clearly an accepted one. But it is to-day almost everywhere accepted, subject to one or two occasional exceptions." Wigmore, § 64, p. 134, vol. L. "Because of the usual slight probative value of a party's character, and of its confusion of issues to little purpose, and for other reasons variously stated by different judges and not easy to disentangle or to define, it has come to be generally accepted that the character of a party in a civil cause cannot be looked to as evidence that he did or did not do an act charged." Greenleaf on Evidence (16th Ed.) § 14b (4) p. 40.

An additional reason for excluding such testimony is because of an auxiliary policy, its practical inconvenience.

It is a kind of evidence that is easily manufactured, is liable to abuse, and if in common use in the courts, as likely to mislead

as to guide aright; and it should not be extended to civil actions where the issue relates to a simple assault, or to the fraud, deceit, or negligence of the defendant, or to similar actions, for they are not within the reasons which may be suggested for the admission of evidence of good character in exceptional civil actions. Hosmer, C. J., in Stow v. Converse, 3 Conn. 325, 8 Am. Dec. 189, where testimony of the plaintiff's good character was not received to rebut a slander, says:

"It is not only in contravention of the fundamental rule that evidence shall be confined to the issue, to admit such testimony, but it would be infinitely dangerous to the administration of justice. Instead of meeting a charge of misconduct by testimony evincive of not having misconducted, general character would become the principal evidence in most cases; and he who could throng the court with witnesses to establish his reputation in general would shelter himself from the wrongs he had perpetrated."

If in every case where an act of dishonesty is imputed the imputation may be met by such evidence, then there are few cases into which such evidence might not be introduced; trials would be insupportably tedious, and the result of a trial would as often depend upon the popularity of a party as upon the merits of his case. These considerations suggest the propriety of adhering closely to the rules which have been established to regulate the admission of evidence of reputation concerning general character.

Such evidence has been received where character is the matter at issue in the cause, and some courts have admitted it, exceptionally, as to the character of a person charged with a negligent act (contributory negligence), if a plaintiff, as throwing light on the probability of his having acted carelessly on the occasion in question, or where other evidence leaves the matter in great doubt, or where the other evidence is purely circumstantial, or (as sometimes put) that

there are no eyewitnesses testifying, or in a case for defamation, where plaintiff is shown to have a bad character, or in cases where character is indicative of a motive, etc.

In the case under consideration defendant was charged with having done certain acts at a specified time; and testimony as to his character, or general reputation, could have no direct effect or probative value upon the specific charges made against him. The trial judge, it appears, was apparently confused by this irrelevant testimony, for in his written reasons for judgment he states that:

"Bebee was shown by the evidence of the best citizens of the vicinity where the ties were purchased to be honest and honorable"

—and he makes this the apparent ground for holding that Bebee had a good title to the ties, and for dismissing plaintiffs' suit.

The testimony certainly serves to confuse the issue, and it has been a great factor in deciding the case in the trial court.

We come now to consider the value of the cross-ties taken from plaintiffs' land and sold to defendant Bebee by the codefendant, Broomfield. Plaintiffs show that 224,000 feet of timber was taken from their lands; but they do not show the value thereof, and they do not trace it all to Bebee. They also show that they have sequestered 2,536 pine ties made from pine timber on their land, and in the possession of defendant Bebee, and defendant Bebee shows, in his motion to bond the sequestered property, that they are worth $760.80, but this may not be the true value.

It is therefore ordered, adjudged, and decreed that there be judgment in favor of plaintiffs and against the defendant Pleasant Bebee, recognizing and declaring plaintiffs to be the owners of the cross-ties sequestered in this suit, and that they be put into possession thereof, with costs of court, and that the writ of sequestration herein issued be sustained and enforced against the property seized.