## In re ST. VINCENT DE PAUL BENEV. ASS'N OF NEW ORLEANS.*

### Opposition of ELOIY.

### No. 16207.

Court of Appeal of Louisiana. Orleans.

June 14, 1937.

* Rehearing denied Oct. 4, 1937.

Loys Charbonnet and E. B. Charbonnet, Jr., both of New Orleans, for appellant.

C. Ellis Henican, of New Orleans, for appellee.

JANVIER, Judge.

William Gottschalk, receiver of St. Vincent de Paul Benevolent Association, brings this proceeding against Henry Eloiy, alleging that the said Eloiy is claiming title to certain described cemetery lots in St. Vincent de Paul Cemetery, which lots, plaintiff alleges, belong in truth to the association, of which he is receiver. Averring that neither he nor the said Eloiy is in the possession of said property and that neither had possession during the year next preceding the filing of this suit, he proceeds under the provisions of Act No. 38 of 1908, which designates such a suit as "the action to establish title to real estate" and authorizes such an action "where neither of said claimants are in the actual possession of the land * * * claimed."

Eloiy makes answer admitting that the association acquired the property as alleged by plaintiff by deed dated November 8, 1865, but averring that the charter of the said association long since expired by limitation and that he (Eloiy) by act of sale passed on April 14, 1931, acquired title to the said property "from the former owner, Margaret Laborauessire, the only surviving member of St. Vincent de Paul Benevolent Association of New Orleans, at the time of the expiration by limitation of the charter of said association."

In the court a qua there was judgment rejecting the alleged title of Eloiy and recognizing the title of Gottschalk as receiver of the otherwise defunct association. Eloiy has appealed.

▮ In the chain of title relied upon by the receiver, so far as the record shows, there is a missing link, for, though the title in question was first acquired in 1865 by an association bearing an identical name, the association of which Gottschalk is receiver was not formed until 1873, and there is nothing to show that this association succeeded to the rights of an earlier one. It is obvious that an association not formed until 1873 could not have acquired title in 1865 and Eloiy, treating this proceeding as a petitory action, maintains that the plaintiff in the action must succeed, if at all, solely on the strength of his own title, and that, therefore, in view of the alleged missing link, plaintiff's suit must fail.

Plaintiff makes two answers to this contention:

(1) That this is not a petitory action, but is a special proceeding brought under a particular statute enacted for the purpose of trying title as between two rival claimants.

(2) That defendant is a mere trespasser and that, though he claims to possess as the result of title, as a matter of fact he has no semblace of title and, therefore, even if this be treated as a petitory action, the plaintiff need not show perfect title, but need show only title apparently good as against such trespasser.

It is well recognized that the petition itself determines the character of the action and this petition shows clearly that it is brought under authority of the special statute of 1908 and that it is brought solely for the purpose of trying title as between the two rival claimants. The statute obviously does not require that the plaintiff produce proof of perfect title good as against the world, for it provides that the judgment rendered "shall in no case be res adjudicata as to persons not made parties to the suit."

Furthermore, in defendant's answer is found an admission to which we have already referred—that the association acquired title in 1865. That admission was, of course, necessary, for Eloiy, himself claiming title, relies upon that same acquisition by the association in 1865.

The title upon which Eloiy relies comes through and only through that same association and, if that association had no title, then the very title under which Eloiy claims is to the same extent defective.

In Pecot v. Prevost et al., 117 La. 765, 42 So. 263, it was held that: "Where, in a petitory action, the pleadings or the evidence show that the parties trace their titles to the same source, neither can attack the title of their common author." (Syllabus by the court.)

Therefore, even though this be treated as a petitory action, in which the plaintiff must bear the burden of proving perfect title, since the defendant, in his answer, has set up title in himself from the same common ancestor, he cannot, under the authority quoted, be heard to question the title of that ancestor.

▮ The second answer which plaintiff makes to the contention of Eloiy, that plaintiff is under the necessity of proving

perfect title, is that Eloiy is a mere trespasser and that the rule which ordinarily, in petitory actions, requires the plaintiff to show perfect title, has no application in an action against a mere trespasser. That this is true is well settled. In Stille v. Shull, 41 La.Ann. 816, 6 So. 634, 635, the court said: "As against a trespasser, the plaintiff in a petitory action is not bound to show title perfect against the world. He [the trespasser] cannot take advantage of any defects in the titles exhibited by plaintiff. An apparently good title is sufficient against him."

In Union Sawmill Company v. Starnes et al., 121 La. 554, 46 So. 649, the Supreme Court said: "A trespasser cannot take advantage of any defects personal to the parties in the titles exhibited by the plaintiff in a petitory or possessory action." ·

See, also, Vicksburg Railroad Company v. Sledge, 41 La.Ann. 896, 903, 6 So. 725; Patin v. Blaize, 19 La. 396; Thomas et al. v. Turnley, 3 Rob. 206; L. & R. Coucy v. Cummings, 12 La.Ann. 748; Zeringue v. Williams et al., 15 La.Ann. 76; Jamison v. Smith, 35 La.Ann. 609, 612; Gould v. Bebee, 134 La. 123, 126, 63 So. 848; In re Aug. Chabaud Praying for Possession, 3 Orleans App. 420; Taylor v. Williams, 162 La. 92, 98, 110 So. 100; Triche et al. v. Brownell-Drews Lumber Co., 174 La. 512, 141 So. 44.

It is true that defendant claims possession and claims it under a title. But we think it advisable to bear those cases in mind while we enter upon a consideration of the facts on which he bases his claim to title.

In the first place and to start at the beginning, he alleges in his answer that the title to the lots in question was in the St. Vincent de Paul Benevolent Association of New Orleans; that, at the time of the expiration of the charter of that association, Margaret Laborauessire was the sole surviving member and that he acquired title from her. We assume that he intended to draw the conclusion that she, as the sole surviving member, became the owner of the property at the expiration of the charter. He alleges that she transferred it to him by notarial act passed on April 14, 1931. The record shows conclusively that Margaret Laborauessire was not the sole surviving member. But, even if she had been, there can be no question that she would not have succeeded as owner to the property owned of the association. Stock-

holders of a corporation or members of a benevolent association do not become the owners of the property of the corporation or of the association at the expiration of the charter. It still belongs to the association or to the corporation, must be disposed of by legal process and the proceeds distributed to those entitled to them, and it may not be taken over directly by the survivors. In Screwmen's Benevolent Association of Louisiana v. Monteleone, 168 La. 664, 123 So. 116, 117, it was said:

" * * * we do not agree with counsel that, when the charter expired, the property became the joint property of the members then living.

"The association was legally incorporated, and was a separate and distinct intellectual being, different from all of the members who joined or became affiliated with it. All property acquired became the property of the association, and no individual member acquired any separate and independent ownership in the property so acquired.

"When once a legal and valid existent corporation becomes the owner of property, such property remains the property of the corporation until disposed of in the manner provided by the charter or by the law.

"Neither the stockholders of a stock corporation nor the members of a nonstock corporation ever become the owners in common of the property of such corporations. * * *

"Therefore the property here involved continued to be the property of the corporation separate and distinct from the members, and will remain so until disposed of or transferred in some manner provided by law."

It is therefore obvious that the claim of title, through the fact that Margaret Laborauessire was the sole surviving member of the association and therefore became the owner of the property formerly held by the association, is not supported in law to any extent whatever, and we think that defendant recognized this because though, in his answer, he did not refer to any formal transfer by the association to Margaret Laborauessire, he attempted to prove that the association, several years before its charter expired, had sold the property to her by notarial act.

Assuming for the moment that such an association may sell to a private indi-

vidual cemetery vaults in which the bodies of earlier members have already been buried, we find nothing in the record sufficient to convince us that such a transfer was actually made. The records of the cemetery association (a separate organization), in the cemetery of which the benevolent association owned the lots, do not show that there was ever recorded a transfer from the benevolent association to Margaret Laborauessire. If there had been such a transfer, defendant would have relied upon it in his pleadings and would not have rested this link in his title on the allegation that, as a result of the expiration of the charter, the property had devolved upon his ancestor in title, the sole surviving member. We think that the record establishes clearly that there was no actual transfer, by notarial act or in any other formal way, from the benevolent association to Margaret Laborauessire.

The next link in the chain upon which Eloiy relies is the alleged transfer by Margaret Laborauessire to him by notarial act on April 14th. But the record shows that the transfer was made on the night before the death of his pretended vendor. She did not sign the said act of transfer and Eloiy gives as the reason for this failure that she could not read or write. But the record contains several documents showing her name signed by herself. The alleged transfer by Margaret Laborauessire to Henry Eloiy can be given no effect whatever.

■ Eloiy, then, is plainly in the position of a mere trespasser, and, as against him, plaintiff need not show a perfect title.

■ We now consider the evidence touching upon plaintiff's title. In the first place, for the reasons hereinafter set forth, the title of the association in 1873 must be admitted. The association continued to operate under its charter for a period of 25 years, or until 1898, and after that time burials of members and members of the families of members were made in the lots on numerous occasions. It often becomes difficult to determine title to such things as cemetery lots, plots, and vaults, and, recognizing this, we held, in Petit v. De Pass, 5 La.App. 40, that, where more perfect records are not available, the records of the association in whose cemetery vaults, or tombs, or lots, are located, may be examined into and that "the recognition by the cemetery authorities of the owner-

ship * * * creates the presumption that the ownership was acquired in accordance with the rules of that association," and we further held that, where that presumption is once shown, it will be presumed to continue unless there is evidence to overcome it, or to show that the ownership which the cemetery association recognized has terminated.

In the case at bar the records of the cemetery association show that the benevolent association was the owner of the lots in question and that on those records there had never been a transfer from the association to any individual. The actual title certificate has been lost, but the duplicate which was issued and which is found in the record shows that, so far as the cemetery association is concerned, the lots belong to the benevolent association of which plaintiff is receiver.

The certificate showing the burial of Margaret Laborauessire, the same person who, according to defendant, became the owner of the property in question long prior to her death, indicates that she was buried in one of the lots of the association and not in a lot belonging to her. It is true that after the expiration of the charter the surviving members realized that the charter had expired, but, as we have shown, the title did not expire or lapse. Few though they were, the members continued to meet, continued to pay dues at irregular intervals, and, on certain occasions, paid them to this same Margaret Laborauessire. They thus recognized, she as well as the others, that the cemetery lots continued as the property of and remained available to the former members and their descendants. It follows from this that, even if more than 30 years have elapsed (and defendant, as an alternative, relies upon the 30-year prescription), the possession of Margaret Laborauessire was not as owner, was not animo domini, but was purely as the representative of the survivors of the defunct association.

Acquisitive prescription accrues only where the possession is possession as owner and not where it is as representative of someone else. R.C.C. art. 3510.

■ There has never been title in Eloiy. On the contrary, from the time of the acquisition of the property title thereto remained in the benevolent association always until the expiration of its charter and until, by operation of law, it could be disposed of.

By Act No. 26 of 1900 the Legislature provided that, where a charter expires by limitation and no provision is made for liquidation, a receiver may be appointed. In accordance with this act the present receiver was appointed and, as we have said, is seeking recognition of his right to the property in question. We think that he is entitled to that recognition. The threat that, whatever his legal rights may be, he will never be permitted to dispose of the property, does not present a question which we need consider at this time.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.