**POPE v. DANIEL.**

No, 2112.

Court of Appeal of Louisiana. First Circuit.

April 10, 1940.

Osceola H. Carter, of Franklinton, for appellant.

Talley & Richardson, of Bogalusa, for appellee.

OTT, Judge.

The plaintiff alleges that he is the owner of the South half of Headright No. 56 in Township 1 South of Range 14 East, Washington Parish, Louisiana, having acquired the said property from W. I. Daniel on March 1, 1937, by a regular title in which the property is described as 320 acres, more or less, in Headright No. 56 Tp. 1 S.R. 14 East, bounded on the North by lands formerly owned by Harriett Abram and Dr. T. S. Conerly, on the West by land now or formerly belonging to Ison Tollier, on the South by land now or formerly owned by R. M. Pope, and East by Pearl River, less two acres. He traces his chain of title to the said land back to a deed from Rebecca Pope to T. E. Pope and wife in February, 1904, in which the property is described as 320 acres of land on Pearl River bounded North by Dr. T. S. Conerly, East by Pearl River, South by R. M. Pope and West by Harriett Abram.

Plaintiff alleges that during the months of March and April, 1938, the defendant, William J. Daniel, without any authority and against the protest of the plaintiff, entered upon said land and cut and removed therefrom about ten thousand feet of saw-log timber and about 420 cords of pulp wood, and in doing so damaged the land and remaining timber thereon. He asks for damages in the sum of $1,000.

The defendant, Daniel, denies that he cut any timber on the lands of the plaintiff. He admits cutting timber down to a certain blazed line pointed out by the plaintiff as the dividing line between lands belonging to plaintiff and William Pope; that he cut said timber under authority given him from said William Pope, the owner of the land, and he called the latter in warranty. Daniel denies cutting any timber south of the line dividing the lands of plaintiff and William Pope.

William Pope appeared and filed answer setting up a title to the lands on which the defendant, Daniel, admitted cutting the timber, and deraigned his title back to Dr. T. S. Conerly, the titles emanating from Dr. Conerly antedating the title from Rebecca Pope to T. E. Pope and wife through whom the present plaintiff claims

ownership. The title of William Pope begins with two deeds from Dr. T. S. Conerly, viz., a deed from Dr. Conerly to Slush and Hannan in December, 1902, conveying 245.29 acres of land in said Headright No. 56 and described as beginning at the northwest corner of said Headright and run south on old line 26.97 chains to a pine stake; thence east 96.90 chains to Ard's Creek, on west bank; thence north 23°19' west 29.49 chains to stob on old line; thence west along old line 85 chains to the point of beginning, and another deed from Dr. Conerly to Walter Conerly, dated May 4, 1903, conveying 28.68 acres and described as a strip measuring 2.96 chains on the west line of the Headright running east to Ard's Creek and which strip lies immediately south of the other tract, that is the two tracts measure 26.97 and 2.96 chains respectively on the western line of the Headright, with the lower line of the last tract running parallel with that of the lower line of the first tract, 96.90 chains to Ard's Creek, the said Creek being the boundary on the east, and the north line of the Headright being the upper boundary of the first tract..

The issues could be discussed with greater clearness if we were able to draw a sketch of the lands in controversy, but because of the absence from the record of any sketch of the lands and with no plat showing the shape and location of the Headright and the course of Ard's Creek and Pearl River, we find it impossible to draw a sketch that would be sufficiently accurate to be of any great assistance. We might say that the principal controversy revolves around the timber cut from the smaller tract containing 28.68 acres lying just south of the other tract originally purchased from Dr. Conerly. The defendant, Daniel, denies that he cut any timber south of the lower line of this strip but admitting that he did cut the timber under authority from William Pope who claims to own this tract. Therefore, insofar as the timber cut from this tract is concerned, it is obvious that if William Pope did own this tract, the defendant, Daniel, cannot be held liable for any timber cut thereon.

Before entering into a discussion of the ownership of this disputed tract of 28.68 acres which we will call tract B, it will be well to determine whether or not Daniel cut any timber south of this tract B, plaintiff claiming and attempting to prove that Daniel did cut timber south of this tract. Of course, if the testimony shows with legal certainty that this defendant did cut timber below the south line of this tract he would be liable for the timber cut therefrom as he claims no right to cut below this line, regardless of his right to cut the timber on tract B.

The trial judge found that the evidence was too conflicting and uncertain for him to determine whether or not Daniel cut any timber south of the lower line of this tract. We agree with him on this point. While there was some timber cut south of this tract, it is not certain that the defendant cut this timber. Other parties are shown to have cut timber below the south line of this tract, but Daniel and the men who were working for him deny that they cut any timber below the line.

The conflict in this part of the evidence will appear from the statement of two or three of the witnesses for plaintiff who testified that they visited the land and estimated the timber cut therefrom a short time thereafter, and they found where timber had been cut below this lower line, the distance ranging from 40 or 50 feet to as high as 150 feet. One of the witnesses stated that pulp wood had been cut in *one* place south of this line, others testifying that timber had been cut all across the tract below the line. We do not find that the trial judge was in error in his finding on this point.

The trial judge sustained a plea of ten years prescription filed by William Pope as to this tract B and dismissed plaintiff's suit. The case is in this court on an appeal taken by the plaintiff from the judgment which rejected his demands for damages.

As the defendant denies that plaintiff owns tract B, it is clear that plaintiff must first prove his ownership of this land before he can collect damages for any timber cut thereon. As against a mere trespasser or one who claims no title in himself, the plaintiff is not required to prove a title good against the world in order to recover damages for a trespass on the land. A prima facie title is sufficient. Gould et al. v. Bebee et al., 134 La. 123, 63 So. 848; Union Sawmill Co. v. Starnes et al., 121 La. 554, 46 So. 649. But as already stated, where the defendant sets up a title to the land on which the timber was cut, it is incumbent on the plaintiff to prove a title to the land superior to that set up by the defendant claiming ownership of the land from which he admits

cutting the timber. Tircuit v. Burton-Swartz Cypress Company, 162 La. 319, 110 So. 489 (see opinion on rehearing); Walker et al. v. Baer-Thayer Hardwood Company, 14 La.App. 381, 126 So. 541, 129 So. 218; Johnson v. Sylvester, 5 La.App. 720.

■■ Defendants filed exceptions of no cause or right of action which were overruled by the court. The exceptions are re-urged in this court. These exceptions are grounded on the insufficiency of the description in the deed to plaintiff to identify the land and show that the land described is the south half of Headright 56. The plaintiff alleges that he is the owner of the South half of said Headright bounded as set out in the deed and that the defendant cut timber on that land. Whether or not plaintiff is the owner of the south half of the Headright and whether or not defendant cut timber on his land is a question of proof. For the purpose of the exceptions, the allegations of the petition that plaintiff owns the south half of the Headright bounded as set forth in the deed and that defendant cut timber thereon are admitted, and under that situation it cannot be said that the petition does not set out a cause of action. The exceptions were properly overruled.

■ The evidence shows that the south line of the tract sold by Dr. Conerly to Slush and Hannan in December, 1902, is the dividing line of the Headright. In other words, the tract B lies immediately south of this dividing line and is therefore situated in the south half of the Headright. So if the plaintiff owns the south half of this Headright as he alleges, he owns the tract B on which the timber was admittedly cut by the defendant. Let us see on what the plaintiff bases his ownership of the south half of the Headright which would include this tract B.

He relies on a deed emanating from Rebecca Pope in February, 1904. As already stated, that deed describes the land as 320 acres on Pearl River, giving Dr. T. S. Conerly's land as the boundary on the north. At the time that deed was made Dr. Conerly had already conveyed by a recorded deed the tract B containing 28.68 acres to Walter Conerly and all of this tract lies south of the dividing line and it is, of course, located in the south half of the Headright. It is therefore evident that the northern boundary of the land which plaintiff's ancestor in title acquired was the southern line of this tract B which at that time stood in the name of Walter Conerly.

Plaintiff has not produced a title prior in date and superior in rank to this tract B which Dr. T. S. Conerly conveyed to Walter Conerly in 1903. In order for his title to prevail over that of defendant who claims through the deed from Dr. Conerly to Walter Conerly, he must show a better title to this tract than Dr. Conerly had when he conveyed it to Walter Conerly. This he has failed to do.

■ With the evident purpose of showing that Dr. T. S. Conerly only owned the north half of the Headright, plaintiff introduced a deed from Albert Patton to Dr. Conerly in 1898 conveying to the latter the north half of this Headright. The most that can be said of this offering is that, if Dr. Conerly did not acquire this tract B located in the south half of the Headright from some one else other than by the deed from Patton, he did not own it in 1903 when he conveyed the tract to Walter Conerly. But plaintiff must rely on the strength of his own title and not on the weakness of that of the defendant. It remains a fact that plaintiff has failed to show a title antedating and superior to that of the defendant to this tract of land.

Our conclusion on this phase of the case makes it unnecessary for us to pass on the pleas of prescription filed by the warrantor, William Pope.

For the reasons assigned, the judgment which dismissed plaintiff's suit is hereby affirmed at the cost of the appellant in both courts.