LOTTINGER, Judge.
Three actions in trespass were brought by the alleged owners of three different tracts of land for alleged trespass against Kent Piling Company, Inc., W. D. Kent, and R. A. Kent, Jr., for cutting timber from, an island in Tickfaw River in St. Helena Parish, Louisiana, lying between Sections 37 and 42, on the west, and Sections 33 and 41, on the east, in Township 3 South, Range 6 East. As the issues in each of said actions were the same they were consolidated for trial. Accordingly they will be considered together here, however, separate judgments-will be rendered. From a judgment in favor of defendants in the lower court, only the plaintiffs, heirs of E. D. Schilling and W. G. Hamberlin, have taken appeal, therefore, we are not concerned with the third plaintiff, who was Murdock Davis.
Tickfaw River runs north and south in the vicinity of the alleged trespass. Separate tracts of land are owned by plaintiffs, Murdock Davis, who did not appeal, W. G. Hamberlin, and the heirs of E. D. Schilling to' the west of the river. In the vicinity, the river branches out into two legs, the western leg of which is commonly called the West Prong, and the eastern leg of which is commonly called the East Prong. After some distance these two legs run together, thus forming an island. The alleged trespass occurred on this island, title in which is claimed by the plaintiffs herein. Plaintiffs claim that, notwithstanding their title to the ownership of said island, and the timber thereon, the defendants, without any authority whatsoever, did enter into said land and cut timber thereon.
Defendants answered denying ownership of said island by the plaintiffs, and further deny that defendant R. A. Kent Jr., was a party to the operations conducted on said property. Defendants further averred that the said timber was cut and removed under oral contract with William Machaeles and Ed Robertson in good faith, who represented themselves as the owners of said-, island. From an oral judgment in favor of the defendants, the plaintiffs have appealed.
Two plats, or maps, have been introduced as evidence herein. The older of the maps was made by- Stephen Roberts in 1827, included the island in question in Section 42 to the West of the river, thus indicating that said island would, in this case, be *331 owned by the plaintiffs. Although- several sections included in said plat were marked “to be resurveyed”, the sections including the island were not so marked. The plat showing the resurvey of the said area, by J. B. Cabell during 1848, does not indicate, which sections include the said island. As a matter of fact, the- resurvey map does not place the island in any section. The ■solution of this matter is based upon the conclusion as to which of the two maps is controlling.
Plaintiffs have shown no possession of the land comprising the island which would be sufficient to give them title thereto under the thirty years acquisitive prescription laws of this 'state. The only evidence introduced by them to show possession was the fact that they had gone on the island on several occasions for picnics, and that at times they had cut a few cypress trees therefrom in order to make minor repairs to their home. In addition to this, the plaintiffs introduced evidence to the effect that they have always regarded the island as being their property. The burden of showing possession as owner for the thirty year period by some physical act of possession beyond that called for by claimants’ respective titles is on the party claiming such possession. Buckley v. Thibodaux, La.App., 163 So. 172; Louisiana Civil Code, Articles 852, 3515. Such possession must be a corporeal possession in the beginning, which must be continued, or else the possession must be preserved by external and public signs announcing such possession during the entire period coupled with the intention to possess as owner. Louisiana Civil Code Article 3500; Ramos Lumber & Manufacturing Co. v. Sanders, 117 La. 615, 42 So. 158; Croom v. Noel, 143 La. 189, 78 So. 442. As the plaintiffs have failed to show actual, public, and unequivocal possession during the required period of time, their remedy herein must be based either upon valid title, or title translative of ownership coupled with possession of ten years.
Plaintiffs’ petition traces their title back to the year 1874 at which time Section 42 was owned by J. P. S. Thompson. The description of the property, as sold by Thompson during that year, described the eastern boundary of the property as the Tickfaw River. No mention is made as to which prong of the river, the.eastern or western, was then considered as the Tickfaw River. However, it is evident that both prongs were then in existence, a's the survey notes of Stephen Roberts, during the year 1827, make mention of the island, and include said island in Section ,42.
On trial of the matter, counsel for plaintiffs sought to introduce into- evidence certain documents tracing- the plaintiffs’ title prior to the year 1874. Such attempt was immediately objected to by counsel for defendants on the grounds that admission of said evidence would constitute enlargement of the pleadings. In view of the fact that plaintiffs’ petitions only alleged title back to the year 1874 we believe that the admission of such evidence was properly denied. It is, therefore, the opinion of this court that the outcome of this suit must be based on the ownership, and the extent of ownership, of the authors in title of plaintiffs as of the year 1874.
In the original -survey made by Stephen Roberts in 1827, Section 42, including the island, was known as the William George Grant. In the resurvey made by Cabell in 1848, although the island was excluded from Section 42, additional acreage was shown in the same grant adjoining, same to the west thereof. The said additional acreage, however, was not comprised in Section 42, but was included in another township and range. Although we do not determine this fact to be conclusive to the premise that the said island i's not a part of Section 42, it does indicate compensation to the grantee which might have been made in return for the island. In Michigan Land & Lumber Co. v. Rust, 168 U.S. 589, 18 S. Ct. 208, 211, 42 L.Ed. 591, the United States Supreme Court, faced with a similar inclusion and exclusion of property, said: “The act of the state in accepting the new and corrected survey as the basis of adjustment is tantamount to a waiver of any claims under the prior and erroneous survey, for it cannot be that a grantee accepting a patent for lands which according to a final and correct survey are shown to be within *332 the "terms of the grant can thereafter be heard to say, 'Notwithstanding I have taken all the lands shown to belong to me by this correct survey, I also claim lands which by a prior and erroneous, if not fraudulent) survey, appeared to pass under the grant.’ He cannot in that way enlarge the scope of the grant, and, after taking lands which are finally determined to pass under the grant, say, ‘I also insist upon lands ■ which upon such final survey are sho.wn not to be within the grant, simply because under a prior erroneous survey they appeared to be within its terms.”
The evidence shows that the plaintiffs did exercise ownership over the added lands to said grant. Evidence was introduced by the defendant to show that plaintiffs have sold timber rights on the lands acquired by them in the Cabell survey. Evidence was also introduced to show that the State of Louisiana has exercised ownership over the island by selling timber rights on the island, which rights were exercised by the vendee lumber company. Although the plaintiffs’1 have admitted the sale of timber by the state, they explained their reason for not taking action at that time to the fact that such action would have been expensive and bothersome. The defendants show that the plaintiffs gained by the Cabell survey because the' added land therein was greater in acreage to that of the island, and the added land was high land whereas the island was swampy.
Both parties to the controversy introduced- qualified surveyors as witnesses. Mr. C. M. Moore, testifying on behalf of plaintiffs, stated that the surveyors usually follow the resurvey, unless there is some reason for not doing so. He indicated that the original survey might be such reason, but indicated that if he were to make a survey. of the property, -at the time of the trial, he would, nonetheless, use the resurvey of Cabell. Mr. O. C. Hollister, a surveyor who testified on behalf of the defendants, gave testimony similar to that of Mr. Moore. He stated that he bases his points for surveying on the last map of the area.
 Plaintiffs introduced into evidence a photostatic copy of a letter addressed to Miss Lucille May Grace, Registrar, State Land Office, Baton Rouge, Louisiana, by the Assistant Commissioner of the Department of Interior, Washington, D. C., under date of August 1, 1939. Said letter is in answer to an inquiry by Miss Grace as to ownership of the island in question, and, after mentioning the - discrepancy in the two surveys, states as follows: “A resurvey is designed to establish the lines in their original positions and does not change the location of those lines. Since the plat of the original survey shows the east channel as a common boundary between the sections, this office is of the opinion that the showing on that plat should govern and that the island is in fact included in the sections on the west side of the river.”
. The introduction of said letter as evidence was objected to by counsel for defendant on the ground that said letter merely expressed the opinion of the writer and has no legal standing except on that score. We are of the belief that the said letter should have been excluded from evidence. Although the opinion of said official might have been of some weight in determining the question in dispute, such opinion, when not faced by cross-examination would be of no weight in determining the outcome. As authority for such, the counsel for defendant has cited Rector v. Gibbon, 111 U.S. 276, 4 S.Ct. 605; 28 L.Ed. 427, wherein the court held that parties actually entitled to grants of public lands cannot be deprived of their rights because of misconstruction of land office commissioners.
We believe that the defendant in these proceedings has shown such a question to the title of plaintiffs'in the island as to preclude recovery by plaintiffs for the alleged trespass. In the case entitled Foshee v. Kirby Lumber Corporation, 212 La. 44, 31 So.2d 419, 421, which was a case involving an action of trespass for the cutting of timber on property allegedly to be owned by the plaintiff. In 1947 the Supreme Court of Louisiana, through Chief Justice O’Neill, stated: “The plaintiff argues that in a suit ,of this nature the defendant cannot question the plaintiff’s title, and cites the following decisions as authority: Kernion v. Guenon, 1828, 7 Mart., N.S. 171, 172; Bo *333 nis v. James, 1844, 7 Rob. 149; Mott v. Hopper, 1906, 116 La. 629, 40 So. 921; Collins v. Dalton Clark Stave Co., 1911, 128 La. 250, 54 So. 788; Smith v. Grant Timber & Mfg. Co., 1912, 130 La. 471, 58 So. 153; Akers v. Iberia Cypress Co., 1912, 131 La. 833, 60 So. 363; Gould v. Bebee, 1913, 134 La. 123, 63 So. 848. That rule applies only to cases where the plaintiff is in possession of the land on which the defendant has trespassed. In such cases the action for trespass is in the nature of a possessory action and is governed by Article 53 of the Code of Practice, which provides that in a possessory action the defendant cannot contest the plaintiff's title. But the rule has no application to a case like this, where the plaintiff is not in actual possession of the land and is suing merely for damages for timber cut and removed from the land. In such a case the plaintiff cannot by merely charging the defendant with being a trespasser deprive him of the right to question the plaintiff’s title. Smith v. Grant Timber & Mfg. Co., supra; Akers v. Iberia Cypress Co., supra.”
The plaintiffs merely allege that they are the owners of Section 42, and by virtue of the fact that the survey of Stephen Roberts in 1827 showed the island in dispute as being included in said section, that they are, therefore, the owners of the island. They trace their title back to the year 1874, at which time it appears that the said section was owned by J. P. S. Thompson. Some twenty-six years prior to said time, i. e. during 1848, a resurvey of the Township and Range, including Section 42, was made in which resurvey the said island was not included in Section 42. The surveyors who testified for both parties to this controversy stated that it was the general practice for men in their profession to use the latest map of the area when making a survey. The resurvey map of J. B. Cabell of 1848 shows, by notations thereon that it was found correct and approved by the Surveyor General’s Office in Donaldson-ville, Louisiana, on July 3rd, 1848. A further notation states that said resurvey map was confirmed by the Secy, of the Interior under the 2nd Section Act of 29th August, 1842, 48 U.S.C.A. § 1455. It appears from the record that the’ plaintiffs or their authors in title had their land surveyed by Mr. J. B. Womack, Parish Surveyor, and he used as a basis for his survey the resurvey map of J. B. Cabell of. 1848. As the plaintiffs have proven no 'authorship of title under the original grant of William George as shown by the original survey of Stephen Roberts including the island in Section 42, and, as the plaintiffs have only shown title since 1874, at which time the resurvey of J. B. Cabell of 1848 was approved, certified and on file in the Surveyor General’s office, which resurvey was generally regarded as correct and used by surveyors, we .conclude that the plaintiffs have not shown requisite title nor possession to maintain an action in trespass.
For .the reasons hereinabove assigned, the judgment of the lower court will be affirmed.
Judgment affirmed.